# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JEFFREY CHARLES RODD,

        Plaintiff,

v.

WARDEN LEANN LARIVA, ASSISTANT WARDEN M. SMITH, P.A. NORMAN BOOTH, CHIEF DR. SHEILA HADAWAY, DR. NANCY JORDAN, DR. MARK KIDMAN, and N.P. TONYA BIRKS,

        Defendants.

Case No. 19-CV-2115 (NEB/ECW)

ORDER ON MOTION TO DISMISS AND MOTION TO APPOINT COUNSEL

---

Plaintiff Jeffrey Charles Rodd alleges that, in December 2014, while incarcerated at Federal Prison Camp—Duluth ("FPC Duluth"), he was forced to wait thirty or forty minutes outside in sub-zero temperatures. (ECF No. 1 ("Compl.") at 4.) He claims injuries resulting from this time spent outside and the medical care he received afterward. (*Id.* at 10–11.) Rodd brought this suit against various prison staff ("Defendants") claiming that their actions violated his Eighth Amendment rights by showing deliberate indifference to his medical needs, and that they engaged in medical malpractice by failing to treat his eye problems. (ECF No. 3 ("Memorandum")[1] at 4.) This matter is before the Court on

---

[1] Rodd simultaneously filed his Complaint and this Memorandum, styled as a "Civil Memorandum of Law and Complaint of *Bivens* Action and Tort Claim." The Complaint

Defendants' motion to dismiss (ECF No. 39) and Rodd's motion to appoint counsel (ECF No. 49). For the reasons that follow, the Court grants Defendants' motion to dismiss and denies Rodd's motion to appoint counsel.

## BACKGROUND

In December 2014, Rodd was housed at FPC Duluth. (Compl. at 4.[2]) Rodd, who uses a wheelchair, had to travel outside to get from his dorm building to the administrative building, where he receives his medications. (*Id.*) On the morning of December 15, 2014, there was snow on the wheelchair ramp, and Rodd had to wait outside thirty or forty minutes while the ramp was shoveled. (*Id.*) When he reached the administrative building, Rodd's eyes had frozen shut and were "watering and very red." (*Id.*) Rodd alleges that he later discovered that the temperature was more than fifty degrees below zero. (*Id.*)

For the next week, Rodd's eyes continued to be sore, red, and watery. (*Id.*) In February 2015, Rodd saw an eye doctor, Dr. Mark Kidman, who told him that he had fast-developing cataracts. (*Id.* at 5–6.) The following June, Dr. Kidman again told Rodd that he had cataracts, and Rodd informed Dr. Kidman that he could not see out of his left eye

---

explains the factual background of Rodd's case, but is not clear from the Complaint what legal claims Rodd is bringing. The Memorandum, acting as a supplement to the Complaint, specifies that Rodd is bringing a *Bivens* action and a tort claim, and it further details the legal bases for these claims. Accordingly, the Court construes the Complaint as presenting both a *Bivens* claim and a tort claim.

[2] Citations to the Complaint reference ECF page numbers.

and could barely see out of his right eye. (*Id.* at 6.) In September 2016, the eye doctor determined that Rodd was completely blind in his left eye and ninety percent blind in his right eye; the eye doctor then referred Rodd to an ophthalmologist at the Mayo Clinic. (*Id.* at 6–7.)

On November 28, 2016, Rodd saw the ophthalmologist, who told Rodd that he would need surgery. The surgery was scheduled for the following January, though it was later delayed until April. (*Id.* at 7–8.) During the April surgery, doctors replaced Rodd's left eye lens. (*Id.* at 8.) The ophthalmologist allegedly told Rodd that, out of the 13,000 surgeries he had performed, Rodd's cataract was the worst he had seen. (*Id.* at 8–9.) The ophthalmologist scheduled surgery for Rodd's right eye for May 2017, but the Bureau of Prisons ("BOP") later canceled this procedure. (*Id.* at 9.) It was rescheduled for August. (*Id.* at 10.) In the interim, Rodd claims he suffered from headaches and eye flashes. (*Id*. at 9.) On August 12, 2017, Rodd underwent successful surgery on his right eye. (*Id.* at 10.)

As a result of these events, particularly the delays in the surgeries, Rodd claims that he spent two years effectively blind, and that he suffered additional various injuries: his eyes changed color as a result of a dye used in procedures; his eyes no longer dilate; he looks "beady eyed"; he suffers eye pains, "flashers," and headaches; his eyes burn and itch; he cannot see well; his eyes get tired; and his hand-eye coordination is poor. (*Id.* at 10–11.)

Rodd brought this suit in August 2019, alleging (1) that Defendants violated his Eighth Amendment rights by showing deliberate indifference to his medical needs and (2) that Defendants were negligent or committed medical malpractice and thus liable under the Federal Tort Claims Act ("FTCA"). (Compl.; Memorandum.) United States Magistrate Judge Elizabeth Cowan Wright permitted Rodd to proceed *in forma pauperis* but denied his request to appoint counsel. (ECF No. 8.) In October 2020, Defendants filed this motion to dismiss, (ECF No. 39); shortly after, Rodd filed a second Motion to Appoint Counsel, (ECF No. 49). Because Rodd did not exhaust his administrative remedies and did not timely bring his FTCA claims, Defendants' motion to dismiss is granted. Rodd's motion to appoint counsel is denied.

## ANALYSIS

### I.    *Bivens* **Claims**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before bringing a suit regarding prison conditions. 42 U.S.C. § 1997e(a). A suit regarding prison conditions includes both claims about "general circumstances" of confinement and claims regarding "particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is required regardless of the nature of the relief the prisoner seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA does not specify an exhaustion procedure; for a prisoner's claims to be considered

4

administratively exhausted, the prisoner must follow the grievance procedure of the facility where they are incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The BOP has a four-step administrative remedy procedure. (ECF No. 41 at 4–5; ECF No. 43 ¶¶ 5–9); 28 C.F.R. §§ 542.10–.19. First, a prisoner must bring the issue to a staff member, who should attempt to informally resolve the issue. 28 C.F.R. § 542.13(a). Second, if the issue is not informally resolved, the prisoner must submit an Administrative Remedy Request. *Id.* § 542.14. If the warden denies the Administrative Remedy Request, the prisoner must, third, appeal the denial to the BOP's Regional Director. *Id.* § 542.15(a). Fourth and finally, if that appeal is denied, the prisoner must appeal again, this time to the BOP's General Counsel. *Id.* Thus, under the BOP's administrative remedy procedure, a claim is not fully exhausted until the BOP's General Counsel has denied it. *See id.* ("Appeal to the General Counsel is the final administrative appeal.").

Rodd has not exhausted the administrative remedy process. Viewing the allegations in the light most favorable to him, it appears he has satisfied the first step of the BOP's procedure—bringing the issue to the attention of a staff member and attempting to informally resolve the issue—for at least some of his claims. 28 C.F.R. § 542.13(a). After the surgery scheduled for January 2017 was delayed, Rodd told a nurse practitioner about the pain he was experiencing. (Compl. at 7–8.) Additionally, after the surgery scheduled for May 2017 was canceled, Rodd informed a physician's assistant and

several doctors of his pain, and apparently threatened to notify Minnesota Senator Amy Klobuchar, newspapers, and civil rights attorneys of what he "was victim to[]." (*Id.* at 9.) At the motion to dismiss stage, the Court will assume that these actions satisfy the requirement to try to informally resolve disputes. 28 C.F.R. § 542.13(a). But Rodd does not allege that he took any of the latter three steps in the BOP's administrative remedy procedure, and the BOP's database shows that he made no administrative remedy claims. (ECF No. 43 ¶¶ 10–13; ECF No. 43-2.) Because Rodd has not taken these steps, the PLRA bars his claims. 42 U.S.C. § 1997e(a).

Rodd argues that he was unable to utilize the BOP's administrative remedy procedure because of his blindness. (ECF No. 50 at 4–5.) The PLRA contains no exceptions to its requirement that prisoners administratively exhaust their remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). There are, however, certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id.* at 1858–60. These circumstances include: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id.* at 1859–60. Rodd has not alleged that administrative remedy procedures were unavailable for any of these three reasons, nor does the record suggest as much. And, as to Rodd's argument that his blindness prevented him from complying

with the administrative remedy procedure, the procedure explicitly allows prisoners to obtain assistance from other prisoners, prison staff, family members, or attorneys.[3] 28 C.F.R. § 542.16(a). Because Rodd had administrative remedies available and failed to exhaust them, the PLRA bars his Eighth Amendment claims.

## II.     FTCA Claim

Under the FTCA, a would-be plaintiff must first present his or her claim to the appropriate federal agency. 28 U.S.C. § 2675(a). In addition, the suit must be filed within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b). Thus, the Court must make two inquiries: (1) whether Rodd presented his claim to the BOP; and (2) whether he filed this suit within six months of the BOP's denial of his claim. The Court concludes that although Rodd may have presented his tort claims to the BOP, he did not comply with the six-month statute of limitations after the BOP denied his claim.

---

[3] Defendants argue that Rodd's ability to file administrative tort claims, this suit, and several motions in this action demonstrate that his blindness would not have prevented him from complying with the administrative remedy procedure. (ECF No. 53 at 3.) This argument overlooks the fact that Rodd, at the time he prepared these materials, was no longer blind. By August 2017, Rodd had successful completed surgery on both eyes. (Compl. at 8–10.) He filed administrative tort claims between January and March 2018, (ECF Nos. 43-5–43-8); he filed this suit in August 2019, and several letters and motions between August 2019 and the present. As such, Rodd's ability to prepare these documents and bring suit after his surgeries does not establish that he would have been able to comply with the BOP's administrative remedy procedures prior to these surgeries.

### A.  Presentment of the Claim

Defendants contend that Rodd did not properly present his tort claims to the BOP because none of the administrative tort claims he filed sufficiently relate to the claim he brings here. To be adequately presented, the claim must provide written notification of the incident and include a claim for money damages. *Mader v. United States*, 654 F.3d 794, 798 (8th Cir. 2011) (*en banc*) (citing 28 C.F.R. § 14.2(a)). The presentment requirement is jurisdictional—if the plaintiff fails to plead it, the court lacks jurisdiction. *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993). The purpose of this requirement is to allow federal agencies "a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader*, 654 F.3d at 800–01.

At the threshold, then, the Court must determine whether Rodd has pled that he presented his FTCA claim to the BOP. Liberally construing Rodd's pleadings, the Court concludes that he has pled that he presented his claims to the BOP. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (explaining that a document filed by a *pro se* party should be liberally construed). Rodd states, in his Memorandum, that he has "exhausted all available Administrative Remedies." (Memorandum at 2.) While this is a conclusory statement and does not specifically allege that Rodd presented his claim to the BOP, the Court will assume that Rodd has properly pled presentment.

The next question is whether he adequately presented his claim to the BOP. As of September 30, 2020, Rodd had filed five administrative tort claims with the BOP. (ECF No. 43 ¶ 15; ECF Nos. 43-3–43-8.) Only one of these claims somewhat relates to Rodd's claims here. In early 2018, Rodd filed administrative tort claim number TRT-NCR-2018-02686, which is based on the incident where he claims his eyes froze shut when he was forced to wait outside while the wheelchair ramp was shoveled. (ECF No. 43-5.) In this tort claim, Rodd claims that he suffered chronic pain as a result of the prison's failure to provide "proper treatment." (*Id.* at 3.) He also attributes his injury and the resulting pain to being improperly designated to a federal prison camp rather than a federal medical center. (*Id.*)

Defendants claim that this administrative tort claim is not sufficiently related to Rodd's FTCA claim in this suit to satisfy the presentment requirement. (ECF No. 41 at 16.) It is true that the bases for the claims are different. The thrust of Rodd's administrative tort claim is that he should have been assigned to a federal medical center, rather than a federal prison camp, and that this misassignment caused his eye injury. (ECF No. 43-5 at 3.) His FTCA claim, meanwhile, focuses on allegedly negligent acts *after* Rodd suffered the eye injury—specifically the prison's delay in treating Rodd for his cataracts and the allegedly substandard care he received. (Memorandum at 1–2, 4, 5, 7–8, 18.) Although Rodd mentioned inadequate treatment of his eye injuries in his administrative tort claim, (ECF No. 43-5 at 3), there is very little overlap between this tort

claim and the tort claim he brings here—not enough for the BOP to "consider, ascertain, adjust, determine, compromise, deny, or settle" Rodd's claim prior to this suit. *Mader*, 654 F.3d at 800–01. Thus, the Court concludes that Rodd has not met the presentation requirement. Even if he had, as set forth below, his claim fails because he did not bring suit within six months.

### B. *Filing Suit within Six Months*

If an agency denies an administrative tort claim, the claimant must file suit within six months of the denial. 28 U.S.C. § 2401(b). The BOP denied the only arguable relevant administrative tort claim, TRT-NCR-2018-02686, on March 21, 2018. (ECF No. 43-5 at 13.) Rodd did not file this suit until August 5, 2019. (Compl.) More than six months elapsed between the denial of his claim and when he filed his suit. As such, Rodd's FTCA claim fails.

Rodd argues that the continuous treatment exception to the FTCA's statute of limitations applies. (Memorandum at 8–9.) Under this doctrine, when a person is receiving continuing tortious medical treatment, his or her cause of action does not accrue until the treatment ends, even if the person knows the treatment is tortious before that time. *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987). The continuing treatment doctrine, however, dictates only the point in time a cause of action accrues. *See id.* The requirement to file a suit within six months of a denial of an administrative tort claim bears no relation to the time when a cause of action accrues. The only relevant times

10

for purposes of the six-month requirement are the date when the agency denied the claim and the date when the suit was filed.[4] *See* 28 U.S.C. § 2401(b). Thus, the continuous treatment doctrine does not relieve Rodd of his failure to file suit within six months of the BOP's denial of his administrative tort claim.

Rodd does not explicitly argue it, but the only other basis on which his failure to timely file suit may be excused is equitable tolling. A party invoking equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Court finds that equitable tolling does not apply. There is no reason to believe that Rodd was diligently pursuing his claims. The letter denying his administrative tort claim clearly instructed him that he must file suit within six months, and Rodd did not file suit until roughly a year-and-a-half later. (ECF No. 43-5 at 13.) Further, the Court sees no extraordinary circumstances that would have stood in the way of Rodd timely filing suit. By the time Rodd received the denial letter, he was no longer blind. For these reasons, equitable tolling does not apply, and Rodd is barred from bringing his FTCA claims.

---

[4] Defendants note that the continuing treatment doctrine would be relevant to the requirement that a claimant file his or her claim within two years of when the cause of action accrued. (ECF No. 41 at 18); 28 U.S.C. § 2401(b). Compliance with this requirement is not in dispute—Defendants concede that Rodd complied with the two-year requirement. (ECF No. 41 at 18.)

### III.    Motion to Appoint Counsel

A *pro se* litigant is not statutorily or constitutionally entitled to counsel in a civil case. *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). To determine whether to appoint counsel, a court considers "the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim." *Id.* Weighing these factors, the Court concludes that appointment of counsel is not merited here. Rodd's claims are not overly complex, and, as demonstrated by his filings, he is able to investigate facts and present his claims. (ECF Nos. 1, 3, 13.) While his filings may not be perfectly clear regarding the nature of his claims, he has presented them with enough clarity that the Court can make out his claims. These factors weigh against appointing counsel, so Rodd's motion to appoint counsel is denied.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 39) is GRANTED;

2.    Plaintiff Jeffrey Charles Rodd's Motion for Appointment of Counsel pursuant to 28 U.S.C. Section 1915(d) and (2) (ECF No. 49) is DENIED; and

3.    Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: January 27, 2021                    BY THE COURT:

                                           s/Nancy E. Brasel
                                           Nancy E. Brasel
                                           United States District Judge